```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
HARRY B. PASCAL and NANCY R. PASCAL,           :
individually and on behalf of a class,          :
                                                :
                    Plaintiffs,                 :
                                                :
       - against -                              :       **OPINION AND ORDER**
                                                :       09-CV-10082 (ER)
JPMORGAN CHASE BANK, NATIONAL                   :
ASSOCIATION,                                    :
                                                :
                    Defendant.                  :
-----------------------------------------------------------------------x
```

Ramos, D.J.:

Plaintiffs Harry and Nancy Pascal ("Plaintiffs" or the "Pascals") commenced this action against Defendant JPMorgan Chase Bank, National Association ("Defendant" or "JPMorgan") alleging a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a)(2) ("FDCPA" or the "Act"). Doc. 1 ("Compl.") ¶ 18. Before the Court is Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, Doc. 55, and Plaintiff's Motion for Class Certification, Doc. 53. For the reasons set forth below, Defendant's motion is GRANTED. Accordingly, because Defendant's motion for summary judgment is granted, the Court does not consider Plaintiffs' motion for class certification, which is DENIED as moot.

## I. Factual Background

Plaintiffs are husband and wife residing in Monsey, New York. Def.'s 56.1 Stmt. ¶ 2.[1] In or about 1996-97, Plaintiffs purchased a property in Monsey (the "Property"). *Id.* ¶ 5. To finance the purchase of the Property, the Pascals obtained a mortgage, which in 2003 was owed to Household Finance Mortgage Services ("Household Finance"). *Id.* On April 7, 2003,

---

[1] Citations to "Def.'s 56.1 Stmt." refer to Defendant JPMorgan's Rule 56.1 Statement, Doc. 58.

Plaintiffs refinanced their mortgage with First Financial Equities, Inc. ("FFE"). *Id.* ¶ 6. Pursuant to the refinancing transaction, FFE paid off the Pascals' obligation under the note and mortgage with Household Finance. *Id.* Accordingly, the only mortgage on the Property in 2003 was the mortgage with FFE. *Id.*

Plaintiffs began making payments under their refinanced mortgage in or about May 2003. Goldfarb Decl. Ex. 3 ("H.B. Pascal Tr.") 27:7-9. Plaintiffs' first payment was made to Washington Mutual Bank ("WaMu"), the servicer of the mortgage, and Plaintiff continued making payments under the refinanced mortgage to WaMu until 2007. *Id.* 26:22-27:16.

On November 1, 2007, Plaintiffs failed to remit their monthly mortgage payment and, as a result, defaulted on their mortgage. Def.'s 56.1 Stmt. ¶ 8. On January 9, 2008, WaMu sent a debt collection letter to the Pascals. Goldfarb Decl. Ex. 5. In the debt collection letter, WaMu referenced their loan number and cautioned Plaintiffs that foreclosure proceedings would be commenced against them if they did not remit the outstanding balance due. Def.'s 56.1 Stmt. ¶ 9, *see also* Goldfarb Decl. Ex. 5.

Mortgage Electronic Registration Systems, Inc. as nominee for FFE assigned the mortgage to U.S. Bank, N.A., as Trustee for CSFB 2003-19 ("U.S. Bank") on February 22, 2008. Pls.' Req. for Judicial Notice Exs. A-C.[2] The assignment of the mortgage to U.S. Bank was recorded on March 7, 2008 in Rockland County, New York. *Id.* Ex. A.

On January 2, 2009, Defendant sent a letter to Plaintiffs (the "Letter"), which was signed by JPMorgan "doing business as Washington Mutual." Compl., Ex. A. The Letter was on WaMu letterhead and stated that on September 25, 2008, "Washington Mutual Bank, the servicer

---

[2] As Defendants do not object to Plaintiffs' submission of the exhibits attached to Plaintiffs' Request for Judicial Notice, Doc. 67, the Court has considered the exhibits in rendering its decision.

of [Plaintiffs'] loan, was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation ['FDIC'] was named Receiver.  Upon closure, JPMorgan Chase Bank, National Association . . . acquired certain assets of Washington Mutual Bank from the FDIC, including the right to service your loan."  *Id.*  The Letter further explained that although JPMorgan is now the servicer of the loan, the loan would continue to be serviced by JPMorgan under the name of "Washington Mutual."  *Id.*  The "re" line referred to "Washington Mutual Loan No. 0607185816."  *Id.*  The Letter enclosed a "Debt Validation Notice," which stated that "[t]he creditor to whom th[e] debt is owed is: Wmmsc M/s."  *Id.*

On January 20, 2009, Plaintiffs sent a letter to JPMorgan disputing "all portions of th[e] debt" and disputing that the name of the creditor to whom the debt is owed is "Wmmsc M/s." Goldfarb Decl. Ex. 10.  On January 26, 2009, U.S. Bank commenced a foreclosure action against Plaintiffs.  Pls.' 56.1 Stmt. ¶ 70.[3]  On September 13, 2010, the court in the foreclosure action entered an Order granting summary judgment against Plaintiffs.  Pls.' Req. for Judicial Notice Ex. D.

## II. Legal Standard on a Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.*  The party moving for summary

---

[3] Citations to "Pls.' 56.1 Stmt." refer to Plaintiffs' (1) Response to Defendant's Rule 56.1 Statement of Material Facts and (2) Additional Material Facts, Doc. 66.

judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)) (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

### III. Defendant is Entitled to Summary Judgment on Plaintiffs' FDCPA Claim

The only cause of action stated in the Complaint is for Defendant's alleged violation of 15 U.S.C. § 1692g(a)(2), which requires debt collectors to provide debtors with a detailed "validation notice." Specifically, the validation notice "shall . . . contain[] . . . the name of the

creditor to whom the debt is owed," among other information. 15 U.S.C. § 1692g(a)(2). Plaintiffs claim that Defendant violated Section 1692g(a)(2) because the Letter "falsely claim[ed] that 'Wmmsc M/s' is the name of the creditor." Compl. ¶ 18.

In support of its motion for summary judgment, Defendant argues that, applying the "least sophisticated consumer" standard, the Letter "leaves no doubt . . . as to who the creditor is and the amount of the debt." Def.'s Mem. L. 20. Defendant argues that the facts uncovered during discovery contradict Plaintiffs' claim that they could not discern the creditor from the Letter, "particularly in light of Mr. Pascal's testimony that he always knew the creditor was [W]aMu or its successors." *Id.* 17. Thus, Defendant's argument focuses on whether the "least sophisticated consumer" would understand that WaMu is the creditor, despite the fact that "Wmmsc M/s" is listed as the "creditor to whom th[e] debt is owed."

Plaintiffs, on the other hand, argue that the Letter is defective because "Wmmsc M/s" is the *servicer* of Plaintiffs' mortgage and not the *creditor*, as stated in the Letter. Pls.' Mem. L. 8. Plaintiffs further contend that neither Plaintiffs, nor any consumer, could discern the identity of the actual "creditor" from the Letter (i.e., U.S. Bank) because U.S. Bank's name is not mentioned or identified anywhere in the Letter. *Id.*

Although Defendant maintains that it is in fact the "creditor" for purposes of the FDCPA, Def.'s Reply Mem. L. 8, the Court need not address that argument because, even assuming *arguendo* that Defendant is not the "creditor" of the loan under the FDCPA, but rather the "servicer," summary judgment is nevertheless appropriate because as the "servicer" of the mortgage, Defendant cannot be held liable under the FDCPA. The FDCPA defines "debt collector" as:

5

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Exempted from the definition of "debt collector" is "any person collecting or attempting to collect any debt owed or due . . . another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Mortgage servicers are therefore not covered by the FDCPA if the debt at issue was acquired before a customer default. That is, the FDCPA only covers servicers who obtain a mortgage that is *already* in default. *See Muniz v. Bank of Am., N.A.*, No. 11 Civ. 8296 (PAE), 2012 WL 2878120, at *4-*5 (S.D.N.Y. July 13, 2012) (holding that servicer of mortgage was not a "debt collector" under the FDCPA where Plaintiff did not allege that loan was in default at the time servicer acquired the debt) (citing *Costigan v. CitiMortgage, Inc.*, No. 10 Civ. 8776 (SAS), 2011 WL 3370397, at *9 (S.D.N.Y. Aug. 2, 2011) (holding that servicer of loan was not liable under the FDCPA where plaintiff failed to allege that his "loan was in default at the time [defendant] 'obtained' that loan")).

Here, the record establishes that WaMu began servicing the mortgage at least as early as May 2003, as Plaintiffs admitted that their first payment under their refinanced mortgage was made in or about May 2003 to WaMu, and that Plaintiffs continued to make mortgage payments to WaMu until 2007. Goldfarb Decl. Ex. 3 ("H.B. Pascal Tr.") 26:22-27:16. However, Plaintiffs argue that because their loan was in default as of the time that JPMorgan acquired certain assets of WaMu, including the right to service their loan, Defendant is not entitled to take advantage of the "servicing exemption." Pl.'s Mem. L. 10. This Court must therefore determine whether the FDCPA covers companies who, like Defendant, acquired certain mortgages as a result of their

acquisition of an original mortgage servicing company, rather than through a specific assignment or transfer of the mortgage.

The FDCPA exempts mortgage servicers from the definition of "debt collector" to the extent that the debt being serviced was not in default at the time it was *obtained* by the servicer, however, the statute does not define the term "obtained." Although the Second Circuit has not addressed the question at issue here, at least one other circuit court, as well as a number of district courts, have found that where a defendant company acquires a debt through its merger with a previous creditor or servicer of the plaintiff, rather than via a specific assignment, the debt was not "obtained" while it was in default. *See Brown v. Morris*, 243 F. App'x 31, 34-35 (5th Cir. 2007). These courts have concluded that such defendant companies are not "debt collectors" under the FDCPA because, as a result of the merger or acquisition, they "stand[] in the place of [the original servicing company] as Plaintiffs' loan servicer." *Fenello v. Bank of Am., N.A.*, No. 11 Civ. 4139 (WSD), 2013 WL 598395, at *6 (N.D. Ga. Feb. 15, 2013); *see also Esquivel v. Bank of Am., N.A.*, No. 12 Civ. 02502 (GEB) (KJN), 2013 WL 682925, at *2 (E.D. Cal. Feb. 21, 2013) (holding that because defendant "'obtained' the debt when its predecessor in interest . . . obtained the debt, . . . Defendant is [not] a 'debt collector' under the FDCPA"); *Meyer v. Citimortgage, Inc.*, No. 11-13432 (AC), 2012 WL 511995, at *7 (E.D. Mich. Feb. 16, 2012) ("[Defendant] is the successor by merger to . . . the originating lender and mortgagee, and therefore it is impossible for the loan to have been in default at the time [defendant] received its interest.").

Here, the Letter clearly states that JPMorgan acquired the right to service Plaintiffs' loan upon its acquisition of WaMu's assets. Compl., Ex. A. Moreover, the Purchase and Assumption

Agreement ("P&A Agreement") between the FDIC and JPMorgan[4] specifically states that JPMorgan "assumes all mortgage servicing rights and obligations of [WaMu]." Goldfarb Decl. Ex. 9, at 8. Additionally, the Letter, which is printed on WaMu letterhead and references Plaintiffs' "Washington Mutual Loan," clearly states that JPMorgan would continue to operate WaMu as the servicer of Plaintiffs' mortgage. Compl., Ex. A. Accordingly, Defendant did not "obtain" Plaintiffs' mortgage while it was in default; rather, by way of its acquisition of WaMu, Defendant "stands in the place of [WaMu] as Plaintiffs' loan servicer."[5] *Fenello*, 2013 WL 598395, at \*6.

The Court finds that the legislative history of the FDCPA supports the finding that Defendant is not a "debt collector" under the statute. The history suggests that the Act was not intended to cover the servicing of loans by widely-recognized national banks in the ordinary course of their business, as is the case here, but rather, to regulate the actions of "third party debt collectors" who regularly engage in "[c]ollection abuse" by, among other things, using "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an

---

[4] Plaintiffs object to Defendant's submission of the P&A Agreement on grounds of relevancy, authentication, and hearsay. Pls.' 56.1 Stmt. at 9-10. The Court denies Plaintiffs' objections and finds that the P&A Agreement is clearly relevant to the issue before the Court on Defendant's summary judgment motion. Moreover, the Court notes that it may take judicial notice of the P&A Agreement, as it is publicly available through the FDIC's website. *See In re UBS Auction Rate Secs. Litig.*, No. 08 Civ. 2967 (LMM), 2010 WL 2541166, at \*7 (S.D.N.Y. June 10, 2010) (taking judicial notice of prospectuses filed with the SEC and publicly available on the SEC's website).

[5] On March 8, 2013, Plaintiffs filed an Amended Response to Defendant's Rule 56.1 Statement of Material Facts, which is substantially similar to Plaintiffs' original response, but attaches as a new exhibit the affidavit of Cierra M. Carey ("Carey Affidavit"), Vice President of JPMorgan, dated October 24, 2012 and filed in the state foreclosure proceeding. Doc. 74, Ex. A. Plaintiffs submit the Carey Affidavit as evidence of its contention that JPMorgan is the servicer of Plaintiffs' mortgage. *Id.* ¶¶ 1, 4. However, the Court's decision already assumes that JPMorgan is the servicer of the loan, and not the creditor; accordingly, the Carey Affidavit does not compel a different outcome. As discussed above, by virtue of its acquisition of WaMu, JPMorgan stands in the place of WaMu as the servicer of Plaintiffs' loan, and is therefore not covered by the FDCPA.

employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S. Rep. No. 95-382, at 2 (1977). The FDCPA was clearly intended to cover "independent collectors" who, unlike creditors and mortgage servicers, "are likely to have no future contact with the consumer and often are unconcerned with the consumers' opinion of them," and "generally operate on a 50-percent commission." *Id.* Thus, the legislative history makes clear that the FDCPA does not cover "mortgage service companies," like Defendant, "who service outstanding debts for others." *Id.* at 3-4.

Accordingly, because the Court finds that Defendant did not "obtain" Plaintiffs' mortgage while it was in default, Defendant is not a "debt collector" under the FDCPA.[6] Since the only claim alleged by Plaintiffs is pursuant to the FDCPA, and because Defendant is not a "debt collector" subject to the requirements of the Act, Defendant's motion for summary judgment is granted.[7]

---

[6] The fact that a validation notice says that it is coming from a "debt collector" and is an "attempt to collect a debt" does not, in itself, qualify the sender of the letter as a "debt collector" under the FDCPA. As district courts in this Circuit, as well as courts in several other Circuits, have held, "'merely announcing that one is a FDCPA debt collector does not make you one'" because the issue of whether the FDCPA applies to a defendant "is a legal question[.]" *Caires v. JPMorgan Chase Bank, N.A.*, 880 F. Supp. 2d 288, 306 (D. Conn. 2012) (quoting *Fouche v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776, 788 n.6 (S.D. Miss. 2008)); *see e.g.*, *Muniz*, 2012 WL 2878120, at *5 (holding that defendant was not a "debt collector" under the FDCPA notwithstanding the fact that the validation notice at issue identified defendant as "a debt collector attempting to collect a debt").

[7] In their opposition papers, Plaintiffs cite to numerous cases involving third-party debt buyers seeking to collect on the debt. Pls.' Mem. L. 11-14. Those cases involve issues regarding the debt buyers' ability to establish that they own the debts being sued upon, or debtors being subjected to competing claims based upon the same debt. *Id.* 11, 13. That is not the situation here. Moreover, because the determination of the FDCPA's application to Defendant is a "legal question," Plaintiffs' argument regarding the potential consequences of consumers not being aware of the holder of their loans is irrelevant to the Court's analysis of the issue.

## IV. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED. The Court does not address Plaintiffs' motion for class certification, which is DENIED as moot. The Clerk of the Court is respectfully directed to terminate the motions and close this case. Docs. 53, 55.

It is SO ORDERED.

Dated: March 11, 2013
White Plains, New York

Edgardo Ramos, U.S.D.J.